UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT MARVIN DOXEY III,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

17-CV-1036
DECISION AND ORDER

On October 13, 2017, the plaintiff, Robert Marvin Doxey III, brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On June 8, 2018, Doxey moved for judgment on the pleadings, Docket Item 13, and on September 13, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 18. On November 16, 2018, Doxey replied. Docket Item 19.

For the reasons stated below, this Court grants Doxey's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On March 27, 2014, Doxey applied for Supplemental Security Income benefits. Tr. 78. He claimed that he had been disabled since October 11, 2013, due to sleep apnea, anxiety disorder, high blood pressure, diabetes, back problems, arthritis in his

knees, anger problems, a learning disability, a cyst, and chronic obstructive pulmonary disease. Tr. 78.

On June 26, 2014, Doxey received notice that his application was denied because he was not disabled under the Act. Tr. 83-84, 86-90. He requested a hearing before an administrative law judge ("ALJ"), Tr. 95-96, which was held on August 25, 2016, Tr. 30. The ALJ then issued a decision on January 12, 2017, confirming the finding that Doxey was not disabled. Tr. 26. Doxey appealed the ALJ's decision, but his appeal was denied, and the decision then became final. Tr.1-3.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Doxey's objection. The records of six providers—Samuel Balderman, M.D., a thoracic surgeon; Tara Mancl, M.D., a surgeon; Shafi Raza, M.D., a family medicine physician; Amandeep Singh, M.B.B.S., a resident physician; Galvin D. Anderson, M.D., a family medicine physician; and Annmarie Zimmerman, M.D., a family medicine physician—are of most significance to this Court's review of the ALJ's decision. The record also includes relevant treatment notes from Doxey's visits to Olean General Hospital.

### A. Olean General Hospital Visits

In December 2011, Doxey was treated at the emergency department of Olean General Hospital. Tr. 219. He reported that his heart felt like it was "racing, then slowing down." *Id.* He also reported high blood pressure. *Id.* After a little over an hour, Doxey was discharged "to home ambulatory, with family" by an emergency room physician. Tr. 220.

2

In June 2012, Doxey returned to Olean General Hospital. Tr. 243. He reported "shortness of breath at rest." *Id.* "At their worst the symptoms were moderate just prior to arrival," but Doxey had "not experienced similar symptoms in the past." *Id.* Doxey was diagnosed with hyperventilation syndrome and adjustment disorder with anxiety. Tr. 245. He was instructed to follow up with a private physician. *Id.*

In May 2013, Doxey again returned to Olean General Hospital. Tr. 246. He reported lower back pain and a "swelling rapid heart rate." *Id.* Doxey was diagnosed with acute lower back pain and strep throat. Tr. 248. He was told that he needs "to see [a] primary care provider for further evaluation of [his] symptoms." Tr. 247.

### B. Samuel Balderman, M.D., Thoracic Surgeon

On February 27, 2013, Dr. Balderman, a thoracic surgeon, examined Doxey. Tr. 227-30. Dr. Balderman diagnosed Doxey with obesity, diabetes, hypertension, knee pain, and lumbar spine pain. Tr. 229-30. Dr. Balderman also noted that Doxey "has mild limitations in kneeling and climbing, due to knee pain. He has mild limitations in repetitive bending and lifting." Tr. 230.

### C. Tara Mancl, M.D., Surgeon

In September 2012, Dr. Mancl, a surgeon, operated on Doxey to remove a cyst. Tr. 291-92. Doxey saw Dr. Mancl several times for follow-up visits. Tr. 272-87. In January 2013, Dr. Mancl noted that Doxey's wounds were continuing to heal and "signs of infection [were] not evident." Tr. 273. Dr. Mancl said that Doxey could "return to driving [a] truck." *Id.*

In February 2013, however, that opinion changed. At that time, Dr. Mancl noted that although his "wounds are continuing to heal . . . [Doxey] has purulent drainage that

3

is concerning for infection." Tr. 275. Dr Mancl noted that Doxey must "refrain from swimming and soaking in water." Id. She also opined that Doxey "is to refrain from driving [a] truck until seen in office for [a follow-up]." Id. After Doxey's March 2013 visit, Dr. Mancl again opined that Doxey must "refrain from driving [a] truck until seen in office for [a follow-up]." Id. In April 2013, although Doxey continued to have some issues with infection, Dr. Manci indicated that he "is able to return to truck driving." Tr. 279. And in May 2013, Dr. Mancl found that Doxey's "wounds appear to be healed." Tr. 281.

### D. Shafi Raza, M.D., Family Medicine Physician

On April 3, 2014, Shafi Raza, M.D., a family medicine physician, evaluated Doxey in connection with pain in his left knee. Tr. 314. Dr. Raza noted that Doxey was "in no acute distress." Id. Dr. Raza determined that Doxey had left knee pain, hypertension, and uncontrolled diabetes. Id. Doxey refused cortisone shots for his knee pain. Id. Instead, Doxey said he wanted to try physical therapy. Id.

Doxey saw Dr. Raza again on July 10, 2014, for a pre-surgical visit because he was scheduled to have another cyst removed. Tr. 316. Although Dr. Raza noted that Doxey had "tenderness on palpation over patella," Doxey again refused "to get cortison [sic] shots" and said he "wants to try" physical therapy. Id. Dr. Raza diagnosed Doey with "[l]umbosacral disc disease" and "[l]eft knee pain." Tr. 317. Doxey followed up with Dr. Raza twice more in August 2014, but the treatment notes do not indicate whether his knee improved. Tr. 319-24.

On September 22, 2014, Doxey saw Dr. Raza with complaints of back pain rated "ten" on a scale of one to ten. Tr. 325. Dr. Raza advised Doxey to "[a]void pushing an[d] pulling heavy things." Tr. 326. But Doxey declined physical therapy. Tr. 325. On

4

December 2, 2014, Doxey saw Dr. Raza again and complained of "worsening back pain." Tr. 327. Doxey again saw Dr. Raza in March and June 2015 with complaints of "back pain." Tr. 344. Tr. 338, 345.

### E. Amandeep Singh, MBBS, Resident Physician; Galvin D. Anderson, M.D., Family Medicine Physician; and Annmarie Zimmerman, M.D., Family Medicine Physician

In August 2015, Doxey saw Dr. Singh, a resident doctor, and the visit was supervised by Dr. Anderson, a family medicine physician. Tr. 348-50. They diagnosed Doxey with hypertension, diabetes, anxiety, and dyslipidemia. Tr. 349. They told Doxey to modify his diet and increase his exercise, and they adjusted his medications. Tr. 350.

In December 2015, Doxey returned to Dr. Singh and the visit was supervised by Dr. Zimmerman, another family medicine physician. Tr. 356-58. Doxey complained that his back continued to hurt and rated the severity of his back pain as a four to five out of ten. Tr. 356. The doctors noted that it had "been suggested multiple times in the past [for Doxey] to go to [physical therapy] which will help him with back pain." *Id.* Doxey agreed to try physical therapy. *Id.*

## III. THE ALJ'S DECISION

In denying Doxey's application, the ALJ evaluated Doxey's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

5

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Doxey had "not engaged in substantial gainful activity since March 27, 2014." Tr. 15. At step two, the ALJ found that Doxey had several severe impairments: "degenerative disc disease of the lumbar spine, pilonidal cyst status post excision, obesity, depressive disorder, and anxiety disorder." *Id*. At step three, the ALJ determined that Doxey did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 17.

In assessing Doxey's RFC, the ALJ determined that Doxey could "perform a less than full range of light work" as defined in 20 C.F.R. § 416.967(b). Specifically, Doxey could

> lift, carry, push and/or pull 50 pounds occasionally and 25 pounds frequently. The claimant is able to sit for two hours total in an eight-hour workday, and he must alternate position after thirty minutes to standing for five minutes. He is able to stand and/or walk for six hours in an eight-hour workday, and he must alternate position after thirty minutes to sitting for five minutes. Although the claimant is unable to climb ladders, ropes, and scaffolds, he is able to occasionally stoop, kneel, crouch, crawl, operate foot controls, and climb ramps and stairs. The claimant can have no exposure to hazards such as unprotected heights or moving machinery. In addition, the claimant is able to engage in occasional interaction with supervisors and co-workers and rare interaction (defined as no more than 1% to 5% of an eight-hour workday) with the public.

Tr. 19.

At step four, the ALJ determined that Doxey is unable to perform past relevant work. Tr. 23. But at step five, the ALJ determined that the Commissioner sustained her burden of establishing that Doxey had the RFC to perform "jobs that exist in significant

7

numbers in the national economy." Tr. 24.  Specifically, the ALJ determined that Doxey could work as a "merchandise marker" or as a "folder."  Tr. 25.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [Social Security Administration ("SSA")] applied the correct legal principles in making the determination."  *Id.*  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990).   Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d a 986.

8

## **DISCUSSION**

Under SSA regulations, a "treating source," is a claimant's "own acceptable medical source who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing [medical] treatment relationship" with the claimant. 20 C.F.R. § 404.1527(a)(2). A treating physician's opinion is given controlling weight so long as: (1) it "is well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques," and (2) it "is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* § 404.1527(c)(2). "[T]he ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Id.* (quoting *Burgess*, 537 F.3d at 129-30).

In this case, Dr. Raza qualifies as a treating source under § 404.1527(a)(2) because Doxey saw him for treatment several times during the relevant period. In formulating Doxey's RFC, the ALJ found that he could "lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently." Tr. 19. Yet, in September 2014, Dr. Raza had instructed Doxey to "[a]void pushing an[d] pulling heavy things." Tr. 326.

The ALJ never addresses Dr. Raza's opinions—including his opinion that at least at one time Doxey should refrain from pushing and pulling things at all—in her decision. Because the ALJ does not address Dr. Raza's opinions at all—let alone explain the weight given to the opinions of the treating source and why—the case must be

9

remanded for that reason alone.  *See Estrella v. Berryhill*, ___ F.3d ___, ___, 2019 WL 2273574, at *5 (2d Cir. 2019).

Furthermore, the ALJ's opinion insufficiently addresses the other medical evidence in the record spanning Doxey's period of disability.  A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "[T]he statute's '12 month' duration requirements apply to both the 'impairment' and the 'inability' to work requirements."  *Barnhart v. Walton*, 535 U.S. 212, 222-223 (2002).  "An application for disability benefits remains in effect until final decision by the [Commissioner] and a claimant will prevail if he can show that he became disabled at any time up to the date of decision."  *Cutter v. Colvin*, 673 F. App'x 78, 80 (2d Cir. 2016) (quoting *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978)).

In this case, that period lasted thirty-nine months—from Doxey's alleged onset date of October 11, 2013, until the ALJ issued her decision on January 12, 2017.  But despite having years of medical evidence from several different providers to evaluate Doxey's claims of disability over that period, the ALJ addressed only a small selection of them.  *See* Tr. 22-23.  For example, with respect to Doxey's alleged physical impairments, the ALJ addressed only Dr. Balderman's opinion, which was based on an evaluation that took place in February 2013—about eight months *before* the alleged onset date.  Tr. 22.  She did "not give [Dr. Balderman's] opinion great weight because it is based on a one-time examination of the claimant prior to the current alleged disability

onset date." *Id.* But because Dr. Balderman's "examination was performed only a few months before the alleged onset date and his opinion and clinical findings are generally consistent with the more recent medical evidence," the ALJ said that that it was due some weight. *Id.*

This Court does not dispute that non-contemporaneous medical evidence can support an ALJ's determination of disability. *See Arnone v. Bown*, 882 F.2d 34, 39 (2d Cir. 1989). But where a claimant provides many years' worth of contemporaneous medical evidence in support of his disability claim, the ALJ must explicitly address at least some of that evidence. And that is especially so where, as here, the medical evidence suggests that the claimant's impairments worsened over the alleged period of disability. Here, for example, treatment notes from Dr. Raza's office indicate that in late 2014—over a year and a half after Dr. Balderman's evaluation but still more than two years before the end of the alleged period of disability—Doxey's back issues became more severe. That is when Dr. Raza instructed Doxey to "[a]void pushing an[d] pulling heavy things" altogether. Tr. 326. Yet—as addressed earlier—the ALJ's decision does not grapple with that opinion—or, indeed, with any opinion of Dr. Raza, a treating source—in any way whatsoever.

The ALJ also noted that "the objective medical evidence and clinical findings in the record are not fully consistent with allegations of disabling work-related functional limitations," but she relied only on a "February 2013 x-ray of the right knee show[ing] minimal degenerative changes." *Id.* Again, evidence regarding Doxey's condition in February 2013 is of limited relevance in considering the allegations that his condition worsened a year and a half later. And again, to reach that conclusion for the entire

11

period of disability, the ALJ had at least to consider the relevant medical evidence during that period and especially the opinions of the treating source.

An ALJ is required to "*both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion." *Perry v. Berryhill*, 2019 WL 1092627, at *2 (4th Cir. Mar. 8, 2019) (emphasis in original) (quoting *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Otherwise the reviewing court is "'left to guess about how the ALJ arrived at his conclusions,' and, as a result, cannot meaningfully review them." *Id.* (quoting *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015)). "Although the ALJ was not required to mention every piece of evidence, providing 'an accurate and logical bridge' required [her] to confront the evidence in [Doxey's] favor and explain why it was rejected before concluding that [his] impairments did not impose more than a minimal limitation on [his] ability to perform basic work tasks." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016) (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)). Because the ALJ's opinion is void of evidence supporting her conclusion as to vast swaths of Doxey's alleged period of disability, and because she failed to apply the treating physician rule to Dr. Raza's opinions, this case must be remanded for further proceedings so that the ALJ can conduct the requisite inquiries in the first instance.[1]

---

[1] Doxey also argues that the ALJ erred in addressing his mental impairments in formulating his RFC, Docket Item 13-1 at 20-26. This Court "will not reach the remaining issued raised by [Doxey] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 18, is DENIED, and Doxey's motion for judgment on the pleadings, Docket Item 13, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: May 30, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE